UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| THE SCHOOL OF THE OZARKS, INC., d/b/a College of the Ozarks, | )<br>)<br>) |
| Plaintiff | ) |
| v. | ) Civil Action No. 21-cv-3089 |
| JOSEPH R. BIDEN JR., President, *et al.*, | ) |
| Defendants | ) |

**DEFENDANTS' SUGGESTIONS IN OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Standards applicable to a motion for injunction pending appeal ........................... 2

    II.   The Court correctly held that this case is not justiciable. ...................................... 3

CONCLUSION ............................................................................................................................... 6

# TABLE OF AUTHORITIES

**CASES**

*Boating Indus. Ass'ns v. Marshall*,
    601 F.2d 1376 (9th Cir. 1979) ................................................................... 4

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020) ................................................................... 1, 2, 3, 4

*Brakebill v. Jaeger*,
    905 F.3d 553 (8th Cir. 2018) ....................................................................... 6

*Cornish v. Blakey*,
    336 F.3d 749 (8th Cir. 2003) ....................................................................... 3

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ............................................................................ 1, 3, 6

*Iowa Right to Life Comm., Inc. v. Tooker*,
    717 F.3d 576 (8th Cir. 2013) ....................................................................... 4

*Munaf v. Geren*,
    553 U.S. 674 (2008) ..................................................................................... 6

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
    538 U.S. 803 (2003) ..................................................................................... 5

*Nat'l Right to Life Pol. Action Comm. v. Connor*,
    323 F.3d 684 (8th Cir. 2003) ....................................................................... 6

*Novus Franchising, Inc. v. Dawson*,
    725 F.3d 885 (8th Cir. 2013) ....................................................................... 6

*Pub. Water Supply Dist. No. 10 v. City of Peculiar*,
    345 F.3d 570 (8th Cir. 2003) ....................................................................... 6

*Russell v. Burris*,
    146 F.3d 563 (8th Cir. 1998) ....................................................................... 5

*Shrink Mo. Gov't PAC v. Adams*,
    151 F.3d 763 (8th Cir. 1998) .................................................................... 2, 3

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ..................................................................................... 5

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................................... 4

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019) ....................................................................... 4

*Trump v. New York*,
    141 S. Ct. 530 (2020) ................................................................................... 3

*United States v. Hunter*,
   459 F.2d 205 (4th Cir. 1972) ............................................................................... 4

*Walsh v. Friendship Vill. of S. Cnty.*,
   No. 19-1395, 2020 WL 5361010 (8th Cir. July 2, 2020) ..................................... 1

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................ 5

*Zanders v. Swanson*,
   573 F.3d 591 (8th Cir. 2009) ............................................................................... 5

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III ...................................................................................................... 6

**FEDERAL STATUTES**

Fair Housing Act, 42 U.S.C. §§ 3601–3619 ................................................... passim

   42 U.S.C. § 3631 ................................................................................................ 5

Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4 ............. 2, 3

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ...... 2, 3, 4

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) .................... 1

**FEDERAL RULES**

Fed. R. App. P. 8(a) .................................................................................................. 2

Fed. R. Civ. P. 62(d) ................................................................................................. 2

**OTHER AUTHORITIES**

U.S. Dep't of Hous. & Urban Dev., Application to the Fair Housing Act of the Supreme
   Court's decision in *Bostock v. Clayton County, GA* (Feb. 9, 2021) ..................... 1

U.S. Dep't of Hous. & Urban Dev., Implementation of Executive Order 13988 on the
   Enforcement of the Fair Housing Act (Feb. 11, 2021) .................................... 1, 2

# PRELIMINARY STATEMENT

The Court properly denied plaintiff School of the Ozarks, Inc.'s ("College") motion for preliminary relief and dismissed this action, and the Court should deny the College's motion for injunction pending appeal for the same reasons. As the Court correctly determined, the challenged Memorandum[1] has not caused any "actual or imminent" injury to the College—it does not "impose[] any restriction, requirement, or penalty" on the College, and the College is not "being investigated, charged, or otherwise subjected to any enforcement action pursuant to the Memorandum." Order 4, ECF No. 24. Accordingly, the College cannot meet the jurisdictional requirement of standing and has not made the "strong showing" of likelihood of success that is needed to justify an injunction pending appeal. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

# BACKGROUND

The defendants' opposition to the College's motion for preliminary relief, Defs.' Suggestions in Opp'n to Mot. for TRO and Prelim. Inj. 5–12, ECF No. 19, and the Court's written ruling, Order 1–3, addressed the background of this case in detail. To recapitulate briefly, in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), the Supreme Court held that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), prohibits employment discrimination on the basis of sexual orientation and gender identity. Thereafter, the Department of Housing and Urban Development (HUD) published a legal analysis concluding that the Supreme Court's reasoning in *Bostock* applies equally to the Fair Housing Act. U.S. Dep't of Hous. & Urban Dev., Application to the Fair Housing Act of the Supreme Court's decision in *Bostock v. Clayton County, GA* (Feb. 9, 2021);[2] *see also Walsh v. Friendship Vill. of S. Cnty.*, No. 19-1395, 2020 WL 5361010, at *1 (8th Cir. July 2, 2020) (vacating lower court holding that the Fair Housing Act did not prohibit discrimination based on sexual orientation and "remand[ing] for further

---

[1] U.S. Dep't of Hous. & Urban Dev., Implementation of Executive Order 13988 on the Enforcement of the Fair Housing Act (Feb. 11, 2021), https://www.hud.gov/sites/dfiles/PA/documents/HUD_Memo_EO13988.pdf.

[2] https://www.hud.gov/sites/dfiles/ENF/documents/Bostock%20Legal%20Memorandum%2002-09-2021.pdf.

proceedings in light of *Bostock*"). The College's challenge in this case focused on a February 11, 2021, Memorandum in which HUD merely restated longstanding intake procedures for Fair Housing Act complaints of sex discrimination, including discrimination based on sexual orientation or gender identity, by aggrieved persons and connected them to *Bostock*.

HUD's stated policy since at least 2010 has been to accept and investigate complaints under the Fair Housing Act alleging discrimination based on sexual orientation or gender identity. The February 2021 Memorandum reaffirmed that longstanding policy and connected it with *Bostock*, instructing that HUD and program participants should "accept" and "investigate" all otherwise jurisdictional "complaints of sex discrimination, including discrimination because of gender identity or sexual orientation." *Id.* at 1–2. The Memorandum did not address precisely what the Fair Housing Act's general proscription of discrimination based on sexual orientation or gender identity would require in specific settings such as student housing, or how it would apply to specific matters such as showers or other private spaces. Nor did the Memorandum address how the Fair Housing Act would interact with other statutory regimes, such as Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, or other statutory or constitutional protections of religious rights, such as the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4.

The Court heard the College's motion for preliminary relief on May 19, 2021, and orally denied the motion. Tr. of Evidentiary Hr'g 77:19–78:10, ECF No. 23. The College then filed the present motion for injunction pending appeal on May 25, 2021. The Court issued its written ruling denying the motion for preliminary relief and dismissing the case on June 4, 2021. Order, ECF No. 24. The Clerk entered judgment on June 7, 2021. J. in a Civil Action, ECF No. 25. The College filed a notice of appeal on June 7, 2021. Notice of Appeal, ECF No. 26.

## ARGUMENT

### I. Standards applicable to a motion for injunction pending appeal

A request for an injunction pending appeal is subject to the same analysis as a request for a preliminary injunction. *See Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998); Fed. R. App. P. 8(a); Fed. R. Civ. P. 62(d). The plaintiff "must show (1) the likelihood of success

on the merits; (2) the likelihood of irreparable injury to appellants absent an injunction; (3) the absence of any substantial harm to other interested parties if an injunction is granted; and (4) the absence of any harm to the public interest if an injunction is granted." *Shrink Mo. Gov't PAC*, 151 F.3d at 764; *see also Hilton*, 481 U.S. at 776 (stating that the moving party must make a "strong showing" that it is likely to succeed on appeal).

## II. The Court correctly held that this case is not justiciable.

The Court correctly determined that the College cannot meet the jurisdictional requirement of standing. The College has not identified any actual or imminent harm that is fairly traceable to the Memorandum or any other HUD action, or that would be redressed by a favorable decision.

The Memorandum merely restates HUD's existing policy of accepting and investigating complaints of discrimination based on sexual orientation or gender identity and connects it to *Bostock*. *See* Order 5. It does not address precisely what the Fair Housing Act's general prohibition of discrimination requires in specific settings, such as student housing. *See* Order 4–5. In particular, the Memorandum does not "requir[e] colleges to allow male students to occupy female student dorm rooms and use their communal showers," as the College tells it, Pl.'s Suggestions in Supp. of Mot. for Inj. Pending Appeal 1, ECF No. 22. Rather, the Memorandum speaks at the same level of generality as *Bostock* itself, which the College agrees did not "address bathrooms, locker rooms, or anything else of the kind," Pl.'s Suggestions 9 (quoting *Bostock*, 140 S. Ct. at 1753). The Memorandum also does not address how the Fair Housing Act would interact with other statutory regimes, such as Title IX, or other statutory or constitutional protections of religious rights, such as the Religious Freedom Restoration Act. *See* Order 4–5.

A general policy statement like the Memorandum cannot support standing absent some more specific action causing "actual or imminent" injury to the plaintiff. *See Trump v. New York*, 141 S. Ct. 530, 534–36 (2020) (holding that the plaintiffs lacked standing to challenge a general policy established by the President because it was unclear how the policy would be put into practice in the face of other "legal and practical constraints"); *Cornish v. Blakey*, 336 F.3d 749,

3

752–53 (8th Cir. 2003) (holding that the plaintiff lacked standing to challenge agency drug-testing protocols before they were applied to him).

The Memorandum does not carry force of law, *see* Order 7 n.2, and does not subject the College to any greater risk of liability than it already potentially faced under the Fair Housing Act and the Supreme Court's ruling in *Bostock*. *Cf. Boating Indus. Ass'ns v. Marshall*, 601 F.2d 1376, 1382 (9th Cir. 1979) (explaining that "[t]he source of the plaintiff's injury" was the statute authorizing workers' compensation claims, not an agency notice that interpreted the statute, given that "[t]he revocation of [the notice] would not eliminate this risk" of enforcement). Any risk of liability the College may face thus is not fairly traceable to the Memorandum. *See* Order 5. Nor is it likely to be redressed by a decision addressed at the Memorandum or against HUD. *See* Order 5–6.

The College also cannot claim injury in the form of a threat of prosecution under the standard described in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), because the College has not shown a "credible threat of enforcement." *Id.* at 159. In each of the cases cited by the College, the court found a credible threat of enforcement based on a past pattern of enforcement and present threats of enforcement. *Cf. id.* at 164–66 (noting a history of past enforcement, including against the plaintiff itself, as well as a threat of criminal enforcement); *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 750 (8th Cir. 2019) (finding that State authorities had stated a clear intent to enforce the statute against similarly situated businesses and had already brought an enforcement proceeding against a similarly situated business). In this case, by contrast, HUD has not threatened enforcement against the College or similarly situated religious colleges. Indeed, there is no history of HUD seeking to enforce the sex discrimination provisions of the Fair Housing Act against an educational institution that is subject to Title IX, and certainly not any institution that, like the College, has been recognized by the Department of Education as entitled to a religious exemption. And in the 53-year history of the Fair Housing Act, HUD has never contended that it applies to political speech or similar expression, and courts have found it obvious that the statute does not reach such speech. *See, e.g.*, *United States v. Hunter*, 459 F.2d 205, 211 n.6, 212 n.9 (4th Cir. 1972); *cf. Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576,

584–87 (8th Cir. 2013) (finding that the plaintiff could not show a credible threat of prosecution and lacked standing to bring First Amendment claims); *Zanders v. Swanson*, 573 F.3d 591, 593–95 (8th Cir. 2009) (same).

The criminal provisions of the Fair Housing Act do not change the analysis. The Fair Housing Act provides criminal penalties only for certain "willful" acts or attempted acts of injury, intimidation, or interference with an individual. 42 U.S.C. § 3631. The College has not alleged that it intends to willfully injure or intimidate its students. *Cf. Russell v. Burris*, 146 F.3d 563, 566–67 (8th Cir. 1998) (holding that the plaintiffs could not establish standing based on a threat of criminal prosecution because they did not allege an intent to engage in proscribed conduct). If it did have such plans, the Court should be loath to immunize it without knowing the particular facts.

The College also cannot claim any injury associated with HUD's Fair Housing Assistance Program (FHAP) or its Fair Housing Initiatives Program (FHIP). There are no State or local government agencies participating in the FHAP in the State of Missouri, and there is no FHIP grantee operating in the College's area. The only FHIP grantee in Missouri is the Metropolitan St. Louis Equal Housing & Opportunity Council, whose FHIP activities are limited to St. Louis and seven neighboring counties in Missouri and Illinois. And the College cannot present claims based on the legal rights or interests of FHAP or FHIP participants. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

Lack of an opportunity to comment on the Memorandum also is not an injury that can support standing. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

This case also is not ripe. No concrete complaint or dispute has arisen, so there is no concrete set of facts in which a court could anchor its analysis. *See Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808–12 (2003). The Court has not heard from any complaining party, and neither the College nor any complaining party has explored whether any

5

hypothetical dispute can be resolved in a way that adequately serves the interests of all involved. Denying review also will not impose hardship on the College, because if a complaint were ever filed with HUD, the College would have an opportunity to present its arguments and protect its interests in administrative proceedings before any charge of discrimination were ever issued and could then seek judicial review if necessary. *See Nat'l Right to Life Pol. Action Comm. v. Connor*, 323 F.3d 684, 693–94 (8th Cir. 2003); *Pub. Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 572 (8th Cir. 2003).

The Court's determination that it lacks subject matter jurisdiction over the action was correct, and it necessarily means that the motion for injunction pending appeal should be denied. The College cannot make the "strong showing" of likelihood of success on appeal that would be needed to justify an injunction. *Hilton*, 481 U.S. at 776; *see Munaf v. Geren*, 553 U.S. 674, 690 (2008); *see also* Order 7 n.2 (noting that even if jurisdiction were proper, the College still could not demonstrate a likelihood of success because it did not state a valid claim for relief). Also, since it has not met the essential requirement of injury in fact under Article III, the College necessarily has not met the more demanding requirement of showing irreparable harm needed to justify an injunction. *See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."). Likelihood of success and irreparable harm are the most important factors, and a party seeking an injunction pending appeal must show both. *See Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2018) ("The most important factor is likelihood of success on the merits, although a showing of irreparable injury without a stay is also required."). The College has not shown either, so its request for an injunction pending appeal should be denied.

## CONCLUSION

The Court properly denied the College's request for preliminary relief and dismissed this action, and it should deny the request for an injunction pending appeal for the same reasons.

Date: June 8, 2021                                   Respectfully submitted,

                                                     BRIAN M. BOYNTON

Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

/s/ JAMES C. LUH
JAMES C. LUH (N.Y. Bar)
SERENA M. ORLOFF (Cal. Bar. No. 260888)
CHETAN A. PATIL (D.C. Bar No. 999948)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington DC 20530
Tel: (202) 514-4938
E-mail: James.Luh@usdoj.gov

TERESA A. MOORE
Acting United States Attorney

CHARLES M. THOMAS, MO #28522
Assistant United States Attorney
United States Attorney's Office
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, MO 64106
Phone: (816) 426-3130
Facsimile: (816) 426-3165
Email: charles.thomas@usdoj.gov

Attorneys for Defendants

7